**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BONNIE HYNOSKI, STEPHEN | : | CIVIL ACTION |
| HYNOSKI, HELEN HYNOSKI, | : | |
| WALTER HYNOSKI, CHRISTINE | : | |
| HYNOSKI, TOM HYNOSKI, THE | : | CLASS ACTION |
| BOROUGH OF CENTRALIA, | : | |
| HAROLD MERVINE, as Executor of the | : | |
| Estate of LAMAR MERVINE, JR. and | : | |
| LANA MERVINE and JOHN | : | |
| KOSCHOFF, | : | |
| Plaintiffs | : | |
| | : | |
| VS. | : | |
| | : | |
| COLUMBIA COUNTY | : | |
| REDEVELOPMENT AUTHORITY, | : | |
| ROSENN JENKINS AND | : | |
| GREENWALD, LLP, JOHN T. | : | |
| ZELINKA, GARY TAROLI, | : | |
| BLASCHAK COAL CO., STEVEN | : | |
| FISHMAN, and COMMONWEALTH | : | |
| OF PENNSYLVANIA, DEPARTMENT | : | |
| OF ECONOMIC DEVELOPMENT, | : | |
| | : | JURY TRIAL DEMANDED |
| Defendants | : | |

**COMPLAINT**

**INTRODUCTORY STATEMENT**

1. a) <u>Purposes of this litigation</u>. This is a federal civil rights complaint seeking both damages and injunctive relief. It also makes class-action allegations. The purpose of this paragraph is not to make specific allegations and therefore any response to this particular paragraph is unnecessary; however, the underlying factual situation is quite

1

complex and voluminous. Understanding this complaint is assisted by reference to the history and background portion of this Introductory Statement appearing in subpart b.

The gravamen of this complaint is an attempt by some American citizens, and a Pennsylvania borough, to redress egregious violations of their rights by a group of private persons, with the connivance of state officials and entities. These defendants covet billions of dollars worth of extremely valuable anthracite coal which lies beneath the surface of the Borough of Centralia. These persons and entities, by and through political connections and the manipulation of governmental agencies and entities, are, among other things, illegally taking the property of the plaintiffs through the unlawful use of government police power. The original government pretense, if indeed it was ever legitimate, has long since expired. In short the purported "Centralia Mine Fire" which allegedly threatened the Borough of Centralia no longer provides, or never did provide, a viable explanation for the application of government power (exercise of eminent domain) and the taking of these American citizens' property.

Plaintiffs allege that their rights are being violated by abusive government officials and entities, in concert with private persons, and that they have been exploited by the defendants to accomplish their unlawful ends. The persistent efforts of this private/government enterprise have resulted in a massive and continuing fraud reflective of both civil and criminal RICO violations. Perhaps the most succinct characterization of this process is expressed in the wisdom of the Hon. Scott Naus of the Court of Common Pleas of Columbia County when he obviously questioned, through the choice of his words, the basis for the suspicious rush to judgment by individuals and government

entities who were purportedly seeking to respond to the dangers of a fire that has never materialized as a threat to Centralia. The fire has never been investigated. No court has ever held a hearing to determine whether the fire is, or ever was, a threat to the Borough or these plaintiffs. Despite pervasive conflicts in the "evidence" of the alleged "threat" posed by the fires, and the additional evidence of questionable political rationales, the fire that has never reached, and will never reach, Centralia has been allowed to act as an engine of private aggrandizement resulting in the unlawful denigration of citizens' rights.

b) <u>Background and history</u>. In 1962, an underground mine fire started in an abandoned coal stripping pit located in Conyngham Township, Columbia County, Pennsylvania that was used by the Borough of Centralia as a trash dump. The fire is one of hundreds of such fires that have occurred over the years in abandoned mines throughout Pennsylvania, and particularly the anthracite coal mining region in and around northeast Pennsylvania. The Borough of Centralia sits over the "mammoth" coal vein, which is believed to hold coal worth billions of dollars. Centralia owns the rights to the coal. The fire occurred in the adjacent "buck mountain" coal vein, and never encroached the Centralia subsurface.

Over the next two decades, many efforts were made to extinguish the fire, none of which were carried through to completion, and, of course, none of which were successful. In or around 1981 the defendant law firm Rosenn, Jenkins, & Greenwald, LLP (hereinafter RJG) represented the Nogard Coal Company, the predecessor in interest to Blaschak Coal Co.. RJG made a claim on behalf of Nogard to the subsurface mineral

rights under Centralia. At that time RJG and certain of the other defendants were aware that the coal reserves in question were worth billions of dollars.

Thereafter, in or around 1983 the United States Department of Interior, Bureau of Mines Office of Surface Mining, issued a report trumpeting the dangers of what they referred to as "The Centralia Mine Fire". Plaintiffs believe that politics was involved in the generation of this report in ways that will be more fully determined during discovery. In that same year, the Columbia County Redevelopment Authority, as agent of the Pennsylvania Department of Community Affairs (predecessor to defendant Department of Community and Economic Development) started a voluntary relocation effort for the citizens of Centralia Borough, although the fire is believed to have never existed under the Borough.  The eminent domain efforts were also conducted by the CCRA as agent of the DCED (specifically its predecessor DCA) and the defendant law firm RJG represented the Commonwealth.  Those efforts are continuing.

Plaintiffs believe and aver that even a cursory examination of the applicable maps showing the geology and water table in the area would demonstrate that the fire would never, and could never, reach Centralia. Nevertheless, based upon what plaintiffs believe to be contrived evidence, CCRA started the voluntary relocation program where Centralia residents were offered modest sums for their property and assistance in transitioning to new homes.  At the time the program began there were approximately 1100 residents in the Borough of Centralia occupying approximately 465 properties, and approximately 400 properties were transferred to the CCRA  through the voluntary program, leaving approximately 60 or so properties as to which the CCRA had to initiate formal eminent

4

domain proceedings, which were all filed in the Columbia County Court of Common Pleas in 1993. Another 50 or so of the remaining property owners eventually agreed to accept payouts for their homes and relocation expenses rather than taking the matters to trial, and most of the rest of the last property owners remaining have recently had the trials to determine the valuation of their properties, again, the issue of the basis for the takings never having been addressed in any proceeding of any nature.

RJG has represented the CCRA and DCED throughout the proceedings, with the original Declarations of Taking having been signed and filed by defendant Taroli. Additionally, upon information and belief, RJG, as previously stated, represented the Nogard Coal Company, and its principals, who also owned substantial acreage of the surface area of the Borough of Centralia. Nogard is believed to have disbanded shortly after the 1981 claim it made to the Centralia subsurface rights, and reorganized by its principals, still represented by RJG, as the Columbia Coal and Development Company. The Columbia Coal and Development Company is believed to have become defunct at or around the time the original Declarations of Taking were filed in 1993, and all of its assets were transferred to Blaschak. The principals of the defunct Nogard Coal Company have since (after the Declarations of Taking were filed) transferred all of their surface rights to land in the Borough to Blaschak, and Blaschak built a warehouse for mining activities literally right across the Borough line in or around 2004, within the purported fire impact area. Upon information and belief, this facility is to be a hub for mining activity in the Borough after it ceases to exist. RJG, and specifically Taroli, have

represented the Commonwealth and Blaschak at all times through the present. As long as the Borough exists, mining cannot commence.

The Condemnors (CCRA and DCED) proceeded on the theory that public action needed to be taken, presumably on the basis of nuisance law, under the Pennsylvania Redevelopment Act, to protect the citizens of Centralia and its environs from the alleged raging presence of the oncoming fire, but there is no evidence to support the position that the fire presented a real and present un-abatable hazard to any of the residents. Nevertheless, the condemnors, represented by RJG, have continued to proceed anyway, and, it is believed, Blaschak, also represented by RJG, is poised to commence mining activities in the soon-to-be "former" Borough. Defendants Fishman and Zelinka have been the primary instrumentalities, i.e., the attorneys, through whom the efforts to access the coal – the eminent domain proceedings – are being carried out. In essence, RJG has represented everyone in this matter.

Blaschak building the storage facility right in the middle of the fire impact area, bringing equipment into the fire impact area to work out of their facility, and purchasing substantial acreage in the Borough after the Declarations of Taking were filed is irrefutable evidence that the defendants in this matter knew that there was no threat from the fire even as they were buying out the residents of the condemnation area and particularly the citizens of Centralia. It also reflected the inside track that RJG's clients had on manipulating the condemnation issues.

Further, one resident who lived right in the middle of the impact area had the Declaration of Taking with respect to his property withdrawn in its entirety, and his

property returned to him in fee simple, after threatening to take action in federal court. Most other citizens, feeling threatened, and being misled about the dangers of the fire, agreed to settlements with RJG and their clients. None of these were aware of the incredible value of the coal beneath them nor that there were plans to acquire the coal and mine in the Borough, although the approximate $90,000 amount received by a former Centralia mayor for her property, an amount believed to be far in excess of the values offered to other residents, suggests that persons other than the named defendants, all additionally to be determined through discovery, were complicit in the scheme.

There are many other glaring inconsistencies and conflicts. Certain citizens particularly those that sold out for relatively small amounts of money were given life estates in their property. Later, Stephen and Bonnie Hynoski attempted to acquire a life estate in their property within the Borough they were refused, while their elderly mother Helen, whose property is not in the Borough, and a few other elderly residents were granted life estates. Another plaintiff John Koschof, also built a building inside Centralia with the knowledge and approval of the defendants. Recently RJG, on behalf of the condemnors, have forced Koschof into a condemnation, offering him a small fraction of the investment they permitted him to make a number of years ago. This condemnation was only filed after plaintiffs raised issues about it not having been filed as evidence of their disparate treatment.

In addition to the manifest Fourteenth Amendment Due Process and Equal Protection violations, the defendants have acted to retaliate against plaintiffs hereto because they have chosen to resist a condemnation procedure which they feel to be not

7

only baseless, but which has been applied to them in an unequal and highly injurious fashion as compared with other citizens similarly situated. The plaintiffs herein have been categorically and expressly denied any opportunity to enjoy a life estate, let alone having their real property taken from them by fraudulent means. This unequal treatment has been applied to them because they have chosen to litigate or have disagreed with accepting the offers of the defendants, and because of the disparate treatment itself. They have also suffered retaliation because they have supported the Borough of Centralia in its resistance of the defendants' abuses.

Further the defendants must dissolve the Borough of Centralia, or cause it to be dissolved, otherwise the coal cannot be accessed. The Borough of Centralia owns the coal in the mammoth vein under the Borough, and defendants would be prohibited from getting at that coal unless, or until, Centralia ceases to exist. The plaintiffs allege that they have been denied the equal protection of the laws, that they have been denied their rights to, and in, their property, a bundle of substantive due process rights which are grouped under the Fourteenth Amendment, that they have been victimized by the egregious abuse of governmental authority in an arbitrary and capricious fashion without any discernible or reasonable government purpose, and that they have suffered retaliation in violation of their First Amendment rights to seek a redress of grievances.

Perhaps what is most offensive about defendants misconduct is their current effort to condemn remaining properties even though the rights of Centralia Borough, for example, who has expressed an interest to mine the subsurface, has <u>never</u> been ascertained. See *Centralia v. The Commonwealth of Pennsylvania, the Department of Community Affairs*

*and the Columbia County Redevelopment Authority. 658 A.2d 840; 1995 PA. Commw. LEXIS 197 at pages 841-842 of the A.2d opinion.* How can defendants condemn if they can't identify and, or, place a value on what they're condemning? Defendants are fully aware of Centralia's desire to mine and defendants obligations under *Belden & Blake v. DCNR 600 PA. 559 (April 29, 2009)*. Defendants have been put on notice of Centralia's interest via a letter provided by their attorney to Mr. Matthew Dominess (DCED). Further, the defendants, in return for a release that the Netchels not sue them, told them they were on the edge of the mine fire impact area (something which is totally false) and implied that they had condemned the Netchel

 property by mistake. They then granted the Netchels a fee simple in their property which is well within the impact area and between the fire and plaintiffs. The defendants' actions are permeated with unlawful selective misconduct beginning many years ago and continuing constantly through to the present.

These violations apply to the named plaintiffs herein, and to the thousands of others who have been unlawfully deprived of their property rights and otherwise affected by the egregious and unlawful course of conduct in which the defendants have engaged, as alleged herein.

## Jurisdiction and Venue

2. Jurisdiction is conferred on this court by 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4) and the remedial statute 42 U.S.C. § 1983 to hear constitutional torts and matters alleging violations of federal statute. Jurisdiction to hear supplemental state claims is conferred by 28 U.S.C. § 1367(c).

3. A jury trial is demanded

4. Class-action allegations are made here-in.

5. Venue is properly in the Middle District of Pennsylvania since all witnesses, parties, and evidence are common to Columbia County Pennsylvania which lies within the jurisdiction of the United States District Court for the Middle District of Pennsylvania.

## Rights Violated

6. The plaintiffs above named, including all members of the proposed class, have Fourteenth Amendment substantive due process rights in their property, inalienable rights shared by all American citizens. For purposes of the law of 42 U.S.C. § 1983 the Borough of Centralia also has such rights.

7. All of the plaintiffs above named, including all members of the proposed class, have rights to the protections afforded by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

8. All of the plaintiffs above named, including all members of the proposed class, have rights to the protections afforded by the First Amendment to the United States

Constitution including freedom from the violation of their rights to expression, association, and to petition for a redress of grievances.

9. All of the plaintiffs above named, including all members of the proposed class, have rights under the Constitution and laws of Pennsylvania to be free from political oppression at the hands of government officials and from fraud at the hands of both errant private persons (and entities) and government officials, and to be free of arbitrary and capricious government action devoid of proper government purposes, all Fourteenth Amendment violations as well.

### Parties

10. The above named plaintiffs, including members of the proposed class, with the exception of Tom Hynoski and Helen Hynoski all own property (real estate) in the Borough of Centralia. Tom, Helen, Christine, and Walter Hynoski (Helen's deceased husband), and other members of the proposed class, own property in Conyngham Township, in the vicinity of the Borough of Centralia but within the jurisdiction of those government entities seeking to condemn properties and property interests belonging to the other plaintiffs.

11. The individual defendant Rosenn Jenkins & Greenwald, LLP (RJG) is a law firm which has coordinated and asserted unlawfully the unlawful actions and interests of certain other defendants, as well as their own, in depriving and attempting to deprive the plaintiffs, in various capacities, of their aforementioned rights.

12. The individual defendants John T. Zelinka and Gary Taroli are attorneys who work for Rosenn Jenkins and Greenwald LLP and have intentionally acted directly on

11

their behalf and adverse to the interests and rights of the plaintiffs and their state and federally guaranteed rights.

13. Stephen Fishman is a state employee who has unlawfully acted as the spokesman and counsel for, and on behalf of, the official defendant Department of Community and Economic Development (DCED), a Commonwealth of Pennsylvania agency.

14. The individual defendant Columbia County Redevelopment Authority(CCRA) is a municipal creature for purposes of 42 U.S.C § 1983 and is subject to compensatory damages (but not punitive damages as a matter of current law).

15. Plaintiffs seek punitive damages from all of the individual defendants.

16.  Plaintiffs believe and aver that there are numerous other individuals and/or entities that have participated in the extensive and egregious violations of their rights as alleged herein that can only be identified through the course of discovery.

## Class Action Allegations

17. The allegations of paragraphs 1 through 16 are incorporated herein by reference in their entirety.

18. Plaintiffs believe and aver that this case is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1), (2) and/or (3).

19. In or around 1983 there were over 1100 residents of the thriving Borough of Centralia, owning approximately 500 properties, including 50 businesses, churches, schools, and other components of a thriving local government, all of whom, and many more over the years, were and continue to be affected by the illegal acts of complained of

herein, and the class would include at least those persons and entities, together with numerous other unidentifiable persons or entities that have been affected by the massive fraud that has been perpetrated as alleged herein.

20. Plaintiffs will be adequate representatives of the class because they have been residents of the Borough of Centralia and Conyngham Township going back decades, and include past and current Borough officials who all have actively opposed the relocation efforts and spoken out about the issues as alleged herein, and are uniquely suited to serve as class representatives because they are all, save Tom Hynoski, still parties to pending takings actions in the courts of the Commonwealth of Pennsylvania. Plaintiffs have at all times acted in the best interests of the Borough of Centralia, and all of its past, present, and future residents.

21. There are questions of law and fact common to the class that predominate over questions relating only to individual members insofar as all class members' rights and interests have been affected in the same manner and to the same extent through the patterns and practices that have been identified as common among to all of the past, present, and future residents of Centralia Borough and Conyngham Towship, Columbia County. As such, Defendants have acted and refused to act on grounds generally applicable to the class. Inasmuch as all members of the class have suffered various degrees of harm as a result of those practices, and a significant focus of this case will be the elimination of those practices through appropriate prospective relief, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

13

22. All of the Hynoski plaintiffs are related. Helen is the mother of Steven, Tom, Walter, and Christine. Bonnie is the wife of Steven and is also the President of the Centralia Borough Council.

23. All of the Hynoski plaintiffs own real estate and claim property interests in the Borough of Centralia with the exception of Tom and Helen. Tom and Helen own property in Conyngham Township which is also subject to the eminent domain proceedings as alleged herein.

24. Tom has been the de facto leader and the most prolific and outstanding critic in opposition to the defendants' unlawful actions. The retaliation the defendants directed at him was because he exercised his right to speak, i.e. his rights of expression.

25. All of the Hynoski plaintiffs have been injured in their First Amendment rights by these defendants, and have been denied their right to the equal protection of the laws by these defendants because of their association with each other i.e., their working together, and supporting, Tom Hynoski  and his efforts in opposition to the defendants through exposing their unlawful activities and organizing litigation efforts against them.

26. All of the Hynoski plaintiffs have also been injured by these defendants because of their Association with Bonnie Hynoski not only because of her support of Tom Hynoski but because she is President of Borough Council (Borough of Centralia) one of the plaintiffs herein, which plaintiff is also opposed to the defendants and their misconduct.

27. The plaintiff, Estate of Lamar and Lana Mervine, is a real property owner in the Borough of Centralia and within the jurisdiction of the condemning authorities

14

(CCRA and DCED). Harold Mervine, Lamar and Lana's son, is the representative of their estate.

28. All of the plaintiffs have been subjected to the same conscious-shocking course of conduct that has led to the deprivation of their rights and interest in their real property.

29. All of the plaintiffs have been denied the equal protection of the laws in that they have been denied, unlike others similarly situated, the availability of a life estate, or, of even a greater interest than a life estate, in their property. These are Fourteenth Amendment rights which these plaintiffs, under color of state law, have suffered violations.

30. All of the plaintiffs have spoken and acted together in opposing the alleged abuses of the defendants in this matter.

**<u>Operative Facts</u>**

31. In or around 1962, a fire was ignited in a refuse dump in Conyngham Township outside the Borough of Centralia in an abandoned coal stripping pit. The fire, which continues to burn today, is one of perhaps dozens of fires that presently exist in the Commonwealth of Pennsylvania.

32. Various efforts were undertaken over the next twenty years to extinguish the fire, but for some reason no single option was fully implemented, and, as such, the fire was not extinguished.

33. In 1983, the Commonwealth of Pennsylvania Department of Community Affairs (later reorganized as the Department of Community and Economic Development)

15

authorized the Columbia County Redevelopment Authority to proceed with a program for the voluntary relocation of all the residents of the Borough of Centralia, which was in the so-called "fire impact zone", along with some other parts of Conyngham Township, supposedly threatened by a spreading and encroaching fire in the Buck Mountain coal vein.

34.  Upon information and belief, no part of the fire ever burned in the subsurface of the Borough, and never could or would have done so due to the geologic conditions and water table in the area.

35.  The Borough of Centralia owns all of the subsurface rights under the Borough, which includes the "Mammoth" coal vein, which is believed to have mineable coal worth billions of dollars.  There is no fire in the Mammoth, which is just below the Buck.

36.  In 1981, defendant RJG made a claim against the coal beneath the surface of Centralia on behalf of the Nogard Coal Company, but never filed any type of litigation over the matter.

37.  Upon information and belief, Nogard was reorganized sometime shortly thereafter and the Columbia Coal and Development Company was formed.  The principals of Nogard and Columbia Coal were the Lynottes, who also owned a substantial acreage of land within the Borough.  The Lynottes may have been complicit in the scheme alleged herein, and may be named as defendants in the future.

16

38. Upon information and belief, the Columbia Coal and Development Company became defunct in or around the early 1990s, and all its assets were sold to defendant Blaschak Coal Company.

39. At all relevant times, RJG has represented Nogard, Columbia, Blaschak, the Lynottes, CCRA, and DCED.

40. At the time the voluntary relocations started in 1983, there were approximately 1100 residents of the Borough of Centralia who owned approximately 465 homes. There were approximately an additional 50 businesses, as well as schools, churches, and other community and local government facilities. Of those, approximately 400 accepted meager payment for their homes and relocation assistance with the belief that the fires supposedly raging under the Borough presented a real and present threat to their safety and well-being, or that there was an imminent risk of such harms.

41. In 1993, the CCRA, again as agent for the DCED (its predecessor DCA), filed declarations of taking with respect to the remaining 60 or so property owners who did not accept payment through the voluntary program. The declarations were filed by RJG representing the interests of the Commonwealth.

42. The primary objective of the defendants thereafter throughout the condemnation proceedings was to coerce the remaining landowners, through attrition, to accept payment for their property and relocation expenses so as to avoid having to put on any evidence in a formal proceeding to substantiate the basis for their claim that the public interest and the health and well-being of the residents of Centralia justified the

17

taking of hundreds of properties and the removal of all of the residents of the Borough. There was no such justification.

43.   At no time from when the condemnations started through the present have any of the defendants offered any competent evidence to support their claim that the takings were, and are, warranted for the reasons represented.

44.   Plaintiffs believe and aver that there is substantial evidence that the fire never was the threat that it was intended to be, and that, to the contrary, there is evidence that any risk of the marginal harms that were once presented by the fire have further abated, and that the fires do not now, and never will, present any threat to the health and well-being of any residents of the Borough of Centralia, or its surrounds.  The fires are going out.  There is no present threat to Centralia or its residents.

45.   Plaintiffs believe and aver that sometime during the course of the efforts to extinguish the fires that a plan was hatched among and between RJG, Nogard, Blaschak, and their principals to use the fire as a pretext to justify the removal of all the residents of the Borough, and, as such, to extinguish the Borough, so that access to billions of dollars worth of coal under the Borough of Centralia and Conyngham Township could be mined. Plaintiffs further believe and aver that this conspiracy also involved a number of local and state public officials, and other private persons, all of whose identities are not yet known, but will be developed through discovery.

46. Within a mile of all plaintiffs' property, and in the heart of the purported fire impact area allegedly at imminent risk of harm from the "Centralia Mine Fire" live Robert Netchel and his family.

18

47. To the immediate south of Netchel's property, prior to plaintiffs attempting to litigate their rights, lay a large coal outcropping. This outcropping was exposed to the air and weather.

48. The coal adjacent to the Netchel property was strippable and was actively stripped until sometime in 2009 when counsel for the plaintiffs began to suggest that a massive fraud of the dimensions as alleged herein was afoot on the foregoing dimensions. The outcropping, which was exposed and visible for decades, has now been covered up.

49. Upon information and belief, Netchel began to litigate against the condemning entities, authorities, and their agents (the defendants CCRA, DCED, RJG, Mr. Zelenka, Mr.Taroli, and Mr. Fishman).

50.  Netchel believed that the defendants claims that the underground coal fire in the Buck Mountain vein was simply a fraud perpetrated by the defendants to unlawfully steal the necessary rights enabling them to mine the Mammoth vein of exceptionally pure and high-quality anthracite coal believed to be worth billions of dollars which lay beneath the Borough of Centralia and the enjoining areas within the condemning authorities jurisdiction.

51. Like the plaintiffs, Mr. Netchel believed, based upon geologic strata plainly visible on available maps, the water table information which was also available on available maps, and core temperature readings, that the fire would never reach Centralia and it would never reach his property.

52. Robert Netchel's property had been condemned by the defendants.

53. The defendants nevertheless allowed the coal immediately to the south and adjacent to Robert Netchel's property to be profitably strip mined.

54. The defendants also had the stripper cover-up the coal outcropping referred to above which clearly indicates their knowledge and awareness that the fire would never have reached Netchel's and what was also plainly deducible that it would not reach Netchel's property from the east i.e. through the Borough of Centralia and through the Hynoski property nor through the property of any other plaintiffs herein.

55. Fearing the disclosure of their unlawful activities and goals, the defendants withdrew the declaration of taking and granted Netchel a fee simple in his property. Netchel was in exactly the same position as the plaintiffs herein prior to the defendants granting him a fee simple in his property out of fear that they would be disclosed.

56. The aforementioned allegations demonstrate that the plaintiffs herein have been denied equal protection of the laws and making their simple requests for a life estate in their property i.e. the right to live out their lives in the homes that they have enjoyed for generations.

57. Other citizens of Centralia were arbitrarily and capriciously granted life estates in their property by these defendants, some within the past few months.

58. While these defendants were unlawfully taking the property rights of the citizens (class action plaintiffs) of Centralia, even though there was no underlying lawful right or government interest in doing so, the defendant Blaschak was permitted to build a building and equip it with mining apparatus, also within the mine fire impact area, to effectuate their illegal grab of mineral rights.

20

59. Also, Blaschak has been permitted to purchase substantial acreage within the Borough, and within the fire impact area, from the Lynottes, who were the owners of the Nogard and Columbia Coal Company. These property transfers were made after the declarations of taking were filed in 1993, and are believed to have been made in anticipation of the commencement of mining activities once the Borough ceases to exist.

60. The defendants granting Blaschak Coal Company, a planned for successor in interest, or a planned for lessee, to Centralia's ownership of the mineral rights (coal) beneath its corporate boundaries, special interests in real property, is evidence of the conscious-shocking fraud that has been perpetrated in violation of plaintiff's substantive due process rights, and an additional violation of the plaintiffs' rights to the equal protection of the laws.

61. The aforementioned allegations alleging violations of the plaintiffs' substantive due process rights (Fourteenth Amendment) and equal protection of the laws rights (Fourteenth Amendment) has continued unabated since on or about 1983 up to and including, without abatement, the present.

62. Upon information and belief, the plaintiffs believe and therefore aver that these defendants are illegally working in conjunction with state officials and state entities to perpetrate a fraud upon the class-action plaintiffs, and the plaintiffs herein, for the purpose of either developing the coal at an appropriate time or using it as a basis for financial dealings i.e. exploiting its value as an extremely valuable commodity to carry on ulterior financial dealings for profit.

63.  RJG began representation of various predecessors in interest of Blaschak who have asserted rights to the coal under the condemned area in the early 1980s.

64.  RJG now represents Blaschak Coal Company who maintains significant holdings in the condemned area including roughly 52.8 acres of surface rights in Centralia.

65.  RJG represents the Commonwealth (DCED) interests in the eminent domain proceedings, and, as such, owes a primary duty of integrity and fidelity to the taxpaying citizens of the Commonwealth of Pennsylvania, which are directly at odds with the private financial interests of its client Blaschak Coal, and have exploited and abused the former in order to advance the cause of the latter, with the assistance of the other remaining defendants and numerous other state, local, and federal officials, whose identities are not yet clearly known.

66.  The goal and purpose of the defendants herein is to extinguish the rights of the class action plaintiffs and the plaintiffs herein including the rights of the Borough so that they can get at the coal which they cannot do as long as the Borough is in existence and particularly if the Borough resists them.

67.  The aforementioned allegations indicate not only unlawful civil misconduct but, plaintiff believes, even criminal misconduct, in derogation of the rights of these plaintiffs and the class action plaintiffs also.

68.  There has never been a public hearing or investigation into whether the purported fire ever actually threatened Centralia and certainly it does not threaten Centralia now and is retreating at worst.  Plaintiffs believe and aver that the only way to

keep this matter from ever having been put to a judicial authority was through a conspiracy of the nature and extent as alleged herein.

69. Plaintiff's believe and aver that the entire underlying matter is a massive fraud designed to acquire access to the coal under the condemned area and that this entire matter has been manipulated planned and carried out by the defendant RJG on behalf of their client Blaschak Coal Company in cooperation with the aforementioned individual and government defendants, and such other persons or identities whose specific identity is not yet known.

70. Plaintiffs herein further allege that they have been mistreated by these defendants in retaliating by resisting through the legal system the defendants' unlawful activities, a First Amendment right plaintiffs have to seek a redress of grievances.

71. As a direct and proximate result of the defendants' actions, Plaintiffs have had their properties taken, and their lives affected in extensive and egregious ways through the deprivation of their lifestyles, their cultures, and their communities, for all of which they seek substantial damages to restore on their behalf, and on behalf of all the members of the class, together with punitive damages for the extreme and outrageous conduct of the defendants.  Plaintiffs additionally seek injunctive relief for the cessation of any actions in furtherance of the unlawful exercise of the eminent domain power as alleged herein.

WHEREFORE plaintiffs demand judgment jointly and severally of the defendants herein (including punitive damages of the individual defendants) for the deprivation of their federally guaranteed rights to include their rights to equal protection under the Fourteenth Amendment, their rights to substantive due process under the Fourteenth Amendment, their rights to be free of fraud, the rights to be free of retaliation for the exercise of both the First Amendment right of expression and to speak out on matters of public concern and their First Amendment right to be free of retaliation for the exercise of the right to petition for a redress of grievances, and they also demand judgment for the violation of their right to be free of arbitrary and capricious government actions devoid of reasonable government purposes under the Fourteenth Amendment, together with damages for pain and suffering, embarrassment and humiliation, costs of litigation with interest, fees, costs, attorneys' fees, and such other legal and equitable relief as may be appropriate.

Respectfully submitted,

/s/ Don Bailey
Attorney ID 23786
4311 North Sixth Street
Harrisburg, PA  17110
717-221-9500
Attorney for Plaintiffs

24