# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE HYNOSKI, STEPHEN HYNOSKI, CHRISTINE HYNOSKI, TOM HYNOSKI, THE BOROUGH OF CENTRALIA, HAROLD MERVINE, JOHN KOSCHOFF, HELEN HYNOSKI, and WALTER HYNOSKI,** <br><br> **Plaintiffs** <br><br> v. <br><br> **COLUMBIA COUNTY REDEVELOPMENT AUTHORITY, ROSENN JENKINS AND GREENWALD, LLP, JOHN T. ZELINKA, GARY TAROLI, BLASCHAK COAL CORPORATION, STEVEN FISHMAN, C. ALAN WALKER, and COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOPMENT,** <br><br> **Defendants** | CIVIL ACTION NO. 4:10-CV-2222 <br><br> (Judge Conner) |

## MEMORANDUM

Plaintiffs Bonnie Hynoski, Stephen Hynoski, Christine Hynoski, Tom Hynoski, the Borough of Centralia, Harold Mervine (as executor of the estate of Lamar Mervine, Jr. and Lana Mervine), John Koschoff, Helen Hynoski, and Walter Hynoski (collectively, "plaintiffs") filed the above-captioned case, pursuant to 42 U.S.C. § 1983, against defendants Columbia County Redevelopment Authority, Rosenn Jenkins and Greenwald, LLP, John T. Zelinka, Gary Taroli, Blaschak Coal Corporation, Steven Fishman, the Commonweath of Pennsylvania Department of

Community and Economic Development, and C. Alan Walker.[1] Presently before the court is plaintiffs' motion (Doc. 2) for preliminary injunctive relief. Plaintiffs seek to enjoin any and all defendants, or anyone acting on their behalf, from taking any action in furtherance of certain eminent domain proceedings presently pending in state court. For the following reasons, plaintiffs' motion for preliminary injunctive relief will be denied.[2]

I. **Factual Background and Procedural History**

In 1962, an underground mine fire was discovered in the vicinity of the Borough of Centralia. After prolonged and unsuccessful attempts to extinguish the fire, the government relocated certain residents of the Borough pursuant to a voluntary relocation process, and it initiated eminent domain proceedings against others. (Doc. 1 at 3-4). Material to the instant matter, in 1993, the government filed declarations of taking. (Id. at 5; Doc. 2, Exh. 7). By operation of law, title to the Centralia properties immediately passed to the Commonwealth, on the date of filing the declaration of taking. (26 PA. CONS. STAT. § 302(a)). The only issue remaining in

---

[1] Plaintiffs named the "Blaschak Coal Co., Inc." and the "Department of Economic Development" as defendants in their complaint. In their briefs opposing plaintiffs' motion for preliminary injunction, however, these two defendants indicated that their correct names are the "Blaschak Coal Corporation" and the "Department of Community and Economic Development," respectively. (See Docs. 20, 22). The court will direct the Clerk of Court to correct the docket sheet to reflect the correct names.

[2] The following discussion shall constitute the court's findings of fact and conclusions of law for purposes of Rule 52(a)(2) of the Federal Rules of Civil Procedure.

the pending proceedings is that of just compensation for the takings. According to the complaint, the government "withdrew" its declaration of taking with respect to one property in the fire impact area (the "Netchel property") and permitted the owner to keep said property. It is this act of relinquishing title in one of the Centralia properties that is the linchpin of plaintiffs' claims.

Plaintiffs filed this action on October 27, 2010, alleging, in pertinent part, that the difference in treatment between their properties and the Netchel property violates their Fourteenth Amendment right to equal protection of the laws.[3] Two days after filing the complaint, plaintiffs filed the instant motion for a preliminary injunction to restrain defendants from taking any action in furtherance of the eminent domain proceedings. The parties have sufficiently addressed the issues raised by the motion, which may be summarily addressed without the need for an evidentiary hearing.

## II. Discussion

The requirements for preliminary injunctive relief are well settled. In order to obtain this extraordinary remedy, the moving party must establish that: (1) there is a reasonable probability of success on the merits, (2) irreparable injury will result without injunctive relief, (3) granting the injunction will avoid a comparably greater

---

[3] Plaintiffs also complain of violations of their rights to substantive due process, free expression, free association, and freedom to petition for redress of grievances, and they raise several pendent state law claims. (Doc. 1 ¶¶ 6-9). However, plaintiffs' preliminary injunction briefs focus solely on their equal protection claims. Accordingly, the court assumes that plaintiffs request injunctive relief on the basis of their equal protection claims alone.

hardship than denying it, and (4) the injunction is in the public interest. See Swartzwelder v. McNeilly, 297 F.3d 228, 234 (3d Cir. 2002); BP Chems., Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 263 (3d Cir. 2000). While each factor need not be established beyond doubt, they must combine to show the immediate necessity of injunctive relief. See 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2948.3 (2d ed. 1995) ("[T]he degree of likelihood of success is not determinative. Rather it must be considered and balanced with the comparative injuries of the parties."). If, however, the moving party fails to show *both* a reasonable probability of success on the merits *and* irreparable injury, then the court must deny preliminary injunctive relief. In re Arthur Treacher's Franchisee Litig., 689 F.2d 1137, 1143 (3d Cir. 1982); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chamberlain, 145 F. Supp. 2d 621, 625 (M.D. Pa. 2001).

### A. **Reasonable Probability of Success on the Merits**

To establish a reasonable probability of success on the merits, the moving party must produce sufficient evidence to satisfy the essential elements of the underlying cause of action. See Punnett v. Carter, 621 F.2d 578, 582-83 (3d Cir. 1980). This requires examination of the legal principles controlling the claim and potential defenses available to the opposing party. See BP Chems., 229 F.3d at 264. However, the mere possibility that the claim might be defeated does not preclude a finding of probable success if the evidence clearly satisfies the essential prerequisites of the cause of action. Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 173 (3d Cir. 2001) (citing 11A WRIGHT ET AL., supra, § 2948.3).

In the matter *sub judice*, plaintiffs advance a claim that defendants violated their rights under the Fourteenth Amendment's Equal Protection Clause, which is actionable pursuant to 42 U.S.C. § 1983. Section 1983 offers private citizens a means to redress violations of federal law by state officials. See 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under this section, a plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

The constitutional right at issue in the pending matter is plaintiffs' right to equal protection of the laws. The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike, see City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985), and plaintiffs allege that they were deprived of this right. Two theories exist upon which a plaintiff may predicate an equal protection claim: the traditional theory and the class-of-one theory. The traditional theory protects individuals from discriminatory treatment

5

based upon membership in a protected class such as race, national origin, or religion. See, e.g., id.; McLaughlin v. Florida, 379 U.S. 184, 192 (1964). Under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if he or she shows irrational and intentional differential treatment when compared with similarly situated individuals. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently than similarly situated individuals. Id. at 564; Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). To assert a class-of-one claim, plaintiffs must demonstrate (1) that defendants treated them "differently from others similarly situated," (2) that defendants "did so intentionally," and (3) that "there was no rational basis for the difference in treatment." Hill, 455 F.3d at 239.

Plaintiffs allege only class-of-one claims. They allege that defendants treated them differently from the owners and occupants of the Netchel property, that they did so intentionally, and that they had no rational basis for the disparate treatment. In response, defendants argue that plaintiffs' claims cannot succeed, for a variety of reasons, of which the undersigned will address two.[4] First, the Commonwealth of Pennsylvania Department of Community and Economic Development ("DCED")

---

[4] For the reasons discussed *infra*, the court concludes that plaintiffs have failed to demonstrate the requisite likelihood of success on the merits. The undersigned will set forth the limited but manifest basis for this conclusion, rendering superfluous any discussion of defendants' remaining arguments.

6

argues that is entitled to immunity under the Eleventh Amendment to the United States Constitution. Second, defendants also argue that plaintiffs' claims are barred by the statute of limitations. The court will address these issues *seriatim*.

### 1. **Eleventh Amendment Immunity**

DCED argues that plaintiffs' claims cannot succeed on the merits because it enjoys sovereign immunity under the Eleventh Amendment. The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI. It provides a jurisdictional bar to private federal litigation against a state and its agencies. Hans v. Louisiana, 134 U.S. 1, 15-16 (1890) (holding that the Eleventh Amendment bars citizens from bringing suit against their own state in federal court); see also Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 72-73 (2000); Lombardo v. Pennsylvania, 540 F.3d 190, 194-95 (3d Cir. 2008).

The Commonwealth of Pennsylvania is not a defendant in the matter *sub judice*; nevertheless, DCED, as an arm of the Commonwealth, is entitled to the protections afforded to the Commonwealth by the Eleventh Amendment. See Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 226 (3d Cir. 2000) (noting that the parties in that case did not dispute that DCED "is within the protection of the Eleventh Amendment"), abrogated in part on other grounds by Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721 (2003); see also Des-Ogugua v. Pa. Dep't of Cmty.

7

& Econ. Dev., No. 1:06-CV-0721, 2006 WL 2950481, at *1 (M.D. Pa. Oct. 16, 2006) (finding that DCED enjoys "Eleventh Amendment immunity from suit").

Eleventh Amendment sovereign immunity is subject to three basic exceptions: (1) Congress may specifically abrogate a state's sovereign immunity by exercising its enforcement power under the Fourteenth Amendment; or (2) a state may waive its sovereign immunity by consenting to suit; or (3) under Ex Parte Young, a state official may be sued in his/her official capacity for prospective injunctive relief. Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 670 (1999); Koslow v. Pennsylvania, 302 F.3d 161, 168 (3d Cir. 2002); Hindes v. FDIC, 137 F.3d 148, 165 (3d Cir. 1998). Plaintiffs' § 1983 claims against DCED do not fall under any of these exceptions to Eleventh Amendment immunity. First, it is well settled that Congress did not intend to abrogate the states' sovereign immunity by enacting § 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). Second, Pennsylvania has unequivocally withheld its consent to such suits. See 42 PA. CONS. STAT. § 8521(b); see also Lombardo, 540 F.3d at 196 n.3; Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). Third, the Ex Parte Young exception to the Eleventh Amendment's jurisdictional bar is inapplicable to plaintiffs' claim against DCED; the exception applies only to officials, not to state agencies. See Ex

Parte Young, 209 U.S. 123 (1908). The court therefore concludes that DCED enjoys sovereign immunity.[5]

### 2. Statute of Limitations

The statute of limitations for an action under 42 U.S.C. § 1983 corresponds to the local statute of limitations for tort actions seeking recovery for personal injuries. See Wilson v. Garcia, 471 U.S. 261, 276, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985); Reitz v. County of Bucks, 125 F.3d 139, 143 (3d Cir. 1997). Hence, Pennsylvania's two-year statute of limitations for personal injury actions governs § 1983 claims brought in federal court in Pennsylvania. See 42 PA. CONS. STAT. § 5524; see also Sameric Corp. of Del. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1998) ("In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury."). Federal law controls the determination as to when a § 1983 claim accrues. See Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991). Under federal law, "[a] section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." Sameric, 142 F.3d at 599.

---

[5] Steven Fishman ("Fishman"), who is being sued in his official capacity, also argues that he enjoys immunity from plaintiffs' claims under the Eleventh Amendment; however, he fails to address the doctrine of Ex Parte Young. The Third Circuit has opined that "a state official sued in his official capacity for prospective injunctive relief is a person within section 1983, and the Eleventh Amendment does not bar such a suit." Hindes v. FDIC, 137 F.3d 148, 165 (3d Cir. 1998). Insofar as plaintiffs seek prospective injunctive relief against Fishman, a state official sued in his official capacity, the court rejects Fishman's sovereign immunity defense.

9

In the instant case, the complaint alleges that the declarations of taking were filed in the Court of Common Pleas in Columbia County in 1993. In addition, exhibits filed by plaintiffs (see Doc. 2, Exhs. 1-3) establish that, on October 9, 2006, DCED contacted Mr. and Mrs. Netchel, offering to withdraw the declaration of taking in exchange for a release of liability. On November 10, 2006, DCED and the Netchels executed a written agreement to this effect. (See id.) Plaintiffs waited until October 27, 2010 to file the complaint in the above-captioned case. It therefore appears that plaintiffs' claims are time-barred. As noted *supra*, the court's analysis of plaintiffs' likelihood of success on the merits requires the court to consider not only plaintiffs' claims, but also defenses that opposing parties may potentially raise. See BP Chems., 229 F.3d at 264.

Although the record in the instant case is incomplete, the statute of limitations has likely expired. In order to survive a statute of limitations affirmative defense, plaintiffs must establish that their claims accrued within two years of October 27, 2010, the date on which they filed their complaint. In other words, they must demonstrate that they neither knew, nor should they have known, of the Netchels' agreement with DCED prior to October 27, 2008. Plaintiffs' moving papers and supporting brief provide no explanation for their delay in filing despite the obviousness of the statute of limitations issue. The court concludes that, by failing to do so, they have failed to establish a likelihood that their claims can survive a statute of limitations defense.

### 3. Overall Likelihood of Success on the Merits

In light of the defenses discussed above, the undersigned cannot conclude that plaintiffs are likely to succeed on the merits of their claims. To the contrary, it appears that DCED is immune from liability, and that defendants are likely to prevail on a statute of limitations defense. Hence, the court concludes that plaintiffs have failed to demonstrate a likelihood of success on the merits.

### B. Irreparable Injury

Irreparable injury is the *sine qua non* of preliminary injunctive relief. It is harm of such an irreversible character that prospective judgment would be inadequate to make the moving party whole. See Anderson v. Davila, 125 F.3d 148, 163 (3d Cir. 1997); Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989); Goadby v. Philadelphia Elec. Co., 639 F.2d 117, 121 (3d Cir. 1981) ("This court has repeatedly emphasized the elementary principle that a preliminary injunction shall not issue except upon a showing of irreparable injury." (internal quotation marks omitted)). The mere risk of injury is not sufficient to meet this standard. Rather, the moving party must establish that the harm is imminent and probable. Anderson, 125 F.3d at 164; 11A WRIGHT ET AL., supra, § 2948.1. Harm that may be contained effectively only through immediate injunctive relief is properly deemed "irreparable." Instant Air Freight, 882 F.2d at 801.

Plaintiffs argue that they "stand to be permanently separated from their real property, their family homesteads, their chosen geographic locales, their community, their friends, their families, their churches, and every other core aspect

11

of a free life in a free and open society." (Doc. 8 at 6). DCED and Fishman argue that the alleged harm is not irreparable, as the valuation process is ongoing[6] and the plaintiffs will be compensated with monetary relief for the takings. (Doc. 20 at 5-6).

Plaintiffs' alleged harms, in the absence of injunctive relief, do not constitute irreparable injury.[7] The Third Circuit has flatly rejected similar claims by other litigants involved in eminent domain proceedings. See, e.g., Goadby, 639 F.2d at 121-23. According to Goadby and its progeny, monetary damages are a sufficient legal remedy for the condemnation of one's property. Indeed, the Fifth Amendment expressly provides for "just compensation" as the remedy for the government's exercise of its powers of eminent domain. U.S. CONST. amend. V. By necessity, money damages are deemed an adequate remedy at law in condemnation proceedings. Therefore, plaintiffs' alleged injury is *not* irreparable. See Hurley v. Kincaid, 285 U.S. 95, 104-105 (1932) (finding no basis to issue an injunction and no showing of irreparable injury, where the complainant can recover just compensation if the government did, in fact, effect a taking of his property; and concluding that "the complainant has a plain, adequate and complete remedy at

---

[6] According to DCED and Fishman, the government filed declarations of taking for the properties previously owned by each of the plaintiffs except John Koschoff. (Doc. 20 at 8).

[7] Furthermore, the court notes that, if it issued the injunction requested by plaintiffs, additional harm may ensue. DCED's opposition brief indicates that some Centralia property owners are still involved in the valuation process. (Doc. 20 at 5-6, 8). Issuing an injunction may harm these plaintiffs by delaying monetary compensation for the taking of their property.

12

law"), Goadby, 639 F.2d at 121 (holding that irreparable harm "must be of a peculiar nature, so that compensation in money cannot atone for it[,]" and that "[i]rreparable injury is suffered where monetary damages are difficult to ascertain or are inadequate" (internal citations omitted)); see also City of Monterey v. Del Monte Dunes, 526 U.S. 687, 710, 714-15 (1999) (noting that no constitutional injury arises from a governmental taking of property where the government provides either monetary compensation for the property or some other "adequate postdeprivation remedy").

To grant the requested relief would essentially strip the government of the use of its eminent domain powers, which have been well-settled in the law for hundreds of years. The harm alleged by plaintiffs is plainly insufficient to compel such a result. Plaintiffs' claims of irreparable injury are not unique. To the contrary, any individual whose property is condemned through eminent domain proceedings could likewise assert that he faces permanent separation from his property, his homestead, and his community. The court is mindful of the gravity of such circumstances, but it finds that plaintiffs have an adequate remedy at law.

**III. <u>Conclusion</u>**

Evaluating a request for a preliminary injunction requires consideration of the totality of all factors that contribute to the analysis. This analysis confers particular attention on the irreparable nature of the harm involved and the likelihood of success on the merits. In the present matter, plaintiffs' failure to establish *either* a reasonable probability of success *or* irreparable injury leads ineluctably to the denial of plaintiffs' request for preliminary injunctive relief.

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated: March 11, 2011

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BONNIE HYNOSKI**, *et al.*, | : CIVIL ACTION NO. 4:10-CV-2222 |
| **Plaintiffs** | : (Judge Conner) |
| v. | : |
| **COLUMBIA COUNTY REDEVELOPMENT AUTHORITY**, *et al.*, | : |
| **Defendants** | : |

## **ORDER**

AND NOW, this 11th day of March, 2011, upon consideration of the motion for a preliminary injunction (Doc. 2), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion is DENIED.

It is further ORDERED that the Clerk of Court is directed to correct the docket of the above-captioned case, to change the name of "Blaschak Coal Co. Inc." to "Blaschak Coal Corporation," and to change the name of the "Department of Economic Development" to the "Department of Community and Economic Development."

                                                S/ Christopher C. Conner  
                                                CHRISTOPHER C. CONNER  
                                                United States District Judge