IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BONNIE HYNOSKI, | : | |
| STEPHEN HYNOSKI, | : | |
| CHRISTINE HYNOSKI, TOM HYNOSKI, | : | |
| THE BOROUGH OF CENTRALIA, | : | |
| HAROLD MERVINE, JOHN KOSCHOFF, | : | |
| HELEN HYNOSKI AND | : | |
| WALTER HYNOSKI, | : | |
| | : | Case No. 4:10-CV-2222 |
| Plaintiffs | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| | : | |
| COLUMBIA COUNTY | : | |
| REDEVELOPMENT AUTHORITY, | : | |
| ROSENN JENKINS AND GREENWALD, | : | |
| LLP, JOHN T ZELINKA, GARY TAROLI, | : | |
| BLASCHAK COAL CORP., STEVEN | : | |
| FISHMAN, COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPT. OF | : | |
| COMMUNITY AND | : | |
| ECONOMIC DEVELOPMENT AND | : | |
| C. ALAN WALKER, | : | |
| | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**
April 19, 2013

This section 1983 action, under the Civil Rights Act of 1871 (42 U.S.C. § 1983),

commenced on October 27, 2010, proceeds on the amended complaint and arises from eminent

1

domain proceedings conducted in Pennsylvania state court. Before the court is defendants'

Rosenn Jenkins and Greenwald, LLP ("RJG"), Gary Taroli ("Taroli"), John T. Zelinka

("Zelinka"), Columbia County Redevelopment Authority ("CCRA"), Commonwealth of

Pennsylvania, Department of Economic Development ("DECD"), Stephen Fishman ("Fishman"),

C. Alan Walker ("Walker"), and Blaschak Coal Corp.'s ("Blaschak") motions to dismiss.

Defs.['] Mot. Dismiss, ECF Nos. 56, 57, 58, 59. Defendants have also jointly moved to stay

discovery pending the outcome of these motions. Defs ['] Mot. Stay, ECF No. 108.

## I.     BACKGROUND

In 1962, an underground mine fire was discovered in the Borough of Centralia, Columbia

County, Pennsylvania.[1] After prolonged but unsuccessful attempts to extinguish the fire, the

government, in 1983, implemented a voluntary relocation program which was carried out by the

CCRA, as an agent of the Department of Community Affairs ("DCA").[2] Thereafter, the CCRA

and DCA initiated eminent domain proceedings against the remaining property owners who did

not take part in the voluntary relocation efforts, including plaintiffs Bonnie, Stephen, Walter, and

Christine Hynoski, and Lamar and Lana Mervine. In 1993, the CCRA – at the behest of the

Commonwealth – filed declarations of taking against these properties. Plaintiffs all filed

preliminary objections claiming that:

> 1.     The CCRA acted ultra vires of its powers and vested
>        authority, pursuant to and in accordance with the Urban

---

[1] The facts giving rise to this litigation are taken from the amended complaint and other pleadings of record. See Am. Compl., ECF No. 54; Def. Mot. Dismiss, ECF No. 70; Third Cir. Op., ECF No. 107-1.

[2] DCA is the predecessor agency to defendant Commonwealth of Pennsylvania, Department of Community and Economic Development ("DCED").

Redevelopment Law, 35 P.S. §§ 1701-1719.1,

2.      As the condemnor, the DCA did not have the power or right to acquire the properties through the exercise of eminent domain, because it had not been delegated the authority to exercise this right by the Commonwealth; and

3.      The takings were not conducted in accordance with due process of law and without proper security first being made, in violation of the Pennsylvania Eminent Domain Code, 26 P.S. §§ 1-101 through 1-903, the Pennsylvania Constitution, and the Constitution of the United States of America.

See Def. Mot. Dismiss, ECF No. 70-2, pp. 2-3; In re Condemnation Proceeding (Borough of Centralia), 658 A.2d 481, 483 (Pa. Commw. 1994).  The Court of Common Pleas of Columbia County, Pennsylvania denied each of plaintiffs' objections, and the Commonwealth Court of Pennsylvania affirmed.  See Def. Mot. Dismiss Exs. B, C, D, E, G, ECF Nos. 70-2, 70-3, 70-4, 70-5, 70-7.  The state court proceedings came to an end when the Supreme Court of Pennsylvania denied plaintiffs' petition for an appeal in September 1995.  See Def. Mot. Dismiss Ex. G, ECF No. 70-7.  On July 1, 2010, a declaration of taking was filed, for the first time, against plaintiff John Koschoff's property.

The instant litigation followed and was commenced on October 27, 2010.  Compl., ECF No. 1.  Two days later, on October 29, 2010, and prior to any responsive pleadings being filed, plaintiffs filed a motion for preliminary injunction.  Pl. Mot. Prelim. Inj., ECF No. 2.  While that motion was pending, all defendants moved to dismiss the complaint.  Defs.['] Mot. Dismiss, ECF Nos. 30, 35, 36, 43.  Plaintiffs responded to the motions to dismiss by filing an amended complaint on February 3, 2011.[3]  Motions to dismiss the amended complaint by all defendants

_____

[3]Although the amended complaint was stricken by order dated June 7, 2011, ECF No. 94, that order was reconsidered and subsequently vacated by the court on August 11, 2011, ECF No.

followed.  Defs.['] Mot. Dismiss, ECF Nos. 56-59.

The operative complaint alleges violations of plaintiffs' due process, equal protection, and First Amendment rights.  It is plaintiffs' belief that the underground mine fire, discovered in the Borough of Centralia, never posed a threat to the health or safety of its residents, but was instead used a pretext to justify removing all residents from the land under which the fire burned, and allow access to billions of dollars worth of coal which could then be mined by defendant Blaschack.  See Am. Compl. ¶¶ 44-45, ECF No. 54, Central to plaintiffs' claims is the allegation that one property (the "Netchel property") was treated differently from the plaintiffs' property in that the declaration of taking filed against the Netchel property was subsequently withdrawn by the CCRA while the taking of  plaintiffs' property remained in force.  See Am. Compl., ¶¶ 46-57, ECF No. 54.

## II.    DISCUSSION

### A.    LEGAL STANDARDS

A motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), tests the legal sufficiency of a claim, (see Neitzke v. Williams, 490 U.S. 319, 326-27 (1989); Petruska v. Gannon University, 462 F.3d 294, 302 (3rd Cir. 2006)), and "streamlines litigation by dispensing with needless discovery and fact finding."  Neitzke, 490 at 326-27.  A complaint should only be dismissed if, accepting as true all of the allegations in the complaint, plaintiff has not pled enough facts to state a claim to relief that is plausible on its face.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Such a standard requires the court to engage in the following three step analysis to determine the sufficiency of a complaint:

---

103.  Thus, this action proceeds on the amended complaint.

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Connelly v. Steel Valley School Dist., 706 F.3d 209, 212 (3rd Cir. January 24, 2013) (quoting

Burch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3rd Cir. 2011)).

"The tenet that a court must accept as true all of the [factual] allegations contained in the complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (internal citations omitted).  In ruling on such a motion, the court primarily considers the allegations of the pleading, but is not required to consider legal conclusions alleged in the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3rd Cir. 1993).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.  At the motion to dismiss stage, the court considers whether plaintiff is entitled to offer evidence to support the allegations in the complaint.  Maio v. Aetna, Inc., 221 F.3d 472, 482 (3d Cir. 2000).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 662.  In considering a Fed. R. Civ. P. 12(b)(6) motion, it must be taken into account that federal courts require only notice pleading, as opposed to the heightened standard of fact pleading.  Hellmann v. Kercher, 2008 WL 2756282, *3 (W.D. Pa. July 15, 2008) (Lancaster, J.)  Fed. R. Civ. P. 8 "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the…claim is and the grounds on which it rests," Twombly, 550 U.S. at 555 (citing Conley

v. Gibson, 355 U.S. 41, 47 (1957)).  However, even under this lower notice pleading standard, a plaintiff must do more than recite the elements of a cause of action, and then make a blanket assertion of an entitlement to relief  under it.  Hellman, 2008 WL 2756282 at *3.  Instead, a plaintiff must make a factual showing of his entitlement to relief by alleging sufficient facts that, when taken as true, suggest the required elements of a particular legal theory.  Twombly, 550 U.S at 555.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - - but it has not "shown" - - "that the pleader is entitled to relief."  Iqbal, 556 U.S. at 662 (citing Fed. R. Civ. P. 8(a)).  A court may dismiss a claim under Fed. R. Civ. P. 12(b)(6) where there is a "dispositive issue of law."  Neitzke, 490 U.S. at 326.  If it is beyond a doubt that the non-moving party can prove no set of facts in support of its allegations, then a claim must be dismissed "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."  Id. at 327.

B.      MATERIAL OUTSIDE THE COMPLAINT

Although none of the defendants' motions to dismiss specifically requests that the court take judicial notice of any documents, defendant Blaschak attaches seven (7) exhibits to its motion.  See Def. Mot. Dismiss, ECF No. 70.  Additionally, plaintiffs seek to incorporate exhibits from their motion for preliminary injunction (ECF No. 2) – along with the preliminary injunction motion itself – into their oppositions to the motions to dismiss.  Because it appears as though both parties intend the court to take judicial notice of their attached and incorporated documents, the court addresses the issue here.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court generally considers only the allegations contained in the complaint, exhibits attached to the

complaint, and matters of public record. See Pension Ben. Guar. Corp. v. White Consol. Industries, Inc., 998 F.2d 1192, 1196 (3rd Cir. 1993) (public records have included dispositions of criminal cases, decisions of government agencies, and published reports of administrative bodies); Fed. R. Civ. P. 12(d). The court may also, however, take judicial notice of certain facts, as well as undisputedly authentic documents if the complainant's claims are based upon these documents. Id. (parties' purchase and sale agreement upon which complaint was based could be judicially noticed); and see Mayer v. Belichick, 605 F.3d 223, 230 (3rd Cir. 2010). A judicially noticed fact is one that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Here, all of the exhibits attached to Blaschak's motion to dismiss fall within the proper scope of the court's notice. The documents include: (1) the declaration of taking against plaintiff Koschoff's property (2) the Hynoski and Mervine plaintiff's objections to the takings; and (3) four Pennsylvania state court opinions related to the objections. See Def. Mot. Dismiss, Exs. A, G, ECF Nos. 70-1 - 70-7. All of these documents are matters of public record and their accuracy is not reasonably questioned as they were all filed in formal state court proceedings. See Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 413 (3rd Cir. 1999) (taking judicial notice of an earlier court opinion as a matter of public record). Taking judicial notice of these documents does not mean that the court accepts as true all the contentions and allegations of the parties contained therein. Rather, the court notices the fact of their filing and the rulings issued by the court of record.

Plaintiffs' documents, in contrast, present a smattering of exhibits which will not all be given the effect of judicial notice by this court. As to plaintiffs' preliminary injunction motion, plaintiffs do not identify what, exactly, they seek to incorporate, other than the entirety of their preliminary injunction brief and the twenty-eight (28) exhibits attached thereto.

As explained above, the only matters outside the complaint that a court may consider on a motion to dismiss, are public records or those facts whose truth and accuracy cannot reasonably be disputed. See Fed. R. Evid. 201(b). A motion for preliminary injunction hardly fits into either of these categories. Such a pleading is nothing *but* an amalgam of disputed factual allegations and evidentiary showings. While the filing of the motion itself is a matter of public record, the arguments and allegations contained within such a motion are hardly matters of undisputed fact. The only purpose served by seeking to incorporate this motion is to include arguments and evidence, allowable on a motion for preliminary injunction, that support plaintiffs' position but that would otherwise be excluded on a motion to dismiss. This perverts the purpose of such a motion and the court does not consider plaintiffs' preliminary injunction brief as incorporated, in any fashion, into its oppositions to the motions to dismiss.

The exhibits attached to plaintiffs' motion for preliminary injunction fall roughly in four categories: (1) property records, (2) court documents, (3) photographs of the parcels of property at issue; and (4) miscellaneous documents including newspaper articles, maps, technical reports, and letters between counsel and parties. See Pl. Prelim. Inj., ECF No. 2. The court will take judicial notice of the exhibits included in the first two categories but will not notice the exhibits in the latter two categories. Exhibits 5, 6, 11 and 12 are public records reflecting the transfer of property between defendant Blaschak Coal and private property owners. See Pl. Mot. Prelim.

Inj., Exs. 5, 6, 11, 12, ECF Nos. 2-2, 2-5.  Specifically, Exhibit 5 is a publicly-recorded tax transfer statement attaching Exhibit 6, an affidavit from grantor Blaschak supporting the transfer. Id.  Exhibits 11 and 12 are the publicly-recorded transfers of property – "The Indenture" – including a legal description of the land, publicly notarized and containing the seal of the Commonwealth of Pennsylvania.  See Pl. Mot. Prelim. Inj., Exs. 11, 12, ECF No. 2-6.  As public records, the court takes judicial notice of these exhibits and the fact that the property described therein was transferred accordingly.

Exhibits 7 and 8 are documents filed with the Court of Common Pleas of Columbia County, Pennsylvania in connection with the eminent domain proceedings which gave rise to the instant litigation.  See Pl. Mot. Prelim. Inj., Exs. 7,8, ECF Nos. 2-4, 2-5.  These documents will be given judicial notice just as the court documents introduced by defendant Blaschak in its motion to dismiss will be so noticed.  See Southern Cross Overseas Agencies, Inc., 181 F.3d at 413.  As public records, the declaration of taking filed against plaintiffs Stephen and Bonnie Hynoski on January 23, 1993 will be judicially noticed along with the petition for appointment of a board of view filed on October 2, 1992.  See Pl. Mot. Prelim. Inj., Exs. 7,8, ECF Nos. 2-4, 2-5.

The remainder of  plaintiffs' exhibits are not the proper subject of judicial notice as they are not matters of public record or undisputed fact.  Exhibits 14 through 26 are simply photographs of rural land, commercial buildings and single family homes.  See Pl. Mot. Prelim. Inj., Exs. 14-26, ECF No. 2-7.  These photographs may represent some of the real property at issue in this litigation, but none are identified as such or described by plaintiffs in any manner. Even if the court were to take notice of these photographs, it is entirely unclear what the court would be taking judicial notice of.  Accordingly, Exhibits 14 through 26 will not be considered

by the court.

Exhibits 1, 2, and 13 are letters of counsel exchanged between parties to this litigation concerning various settlement offers. Nothing about these letters satisfies the requirement of Fed. R. Evid. 201(b) that they not be subject to reasonable dispute. The letters contain, for example, determinations by the parties of whether private property within the Borough of Centralia will be subject to taking and the type of ownership interest certain parties may retain in their property. See Pl. Mot. Prelim. Inj., Exs. 1,2,13, ECF Nos. 2-2, 2-6. These matters go to the heart of this litigation and are certainly the subject of dispute. Additionally, proof that these letters were, in fact, sent or received cannot be verified, and defendants do not offer any such acknowledgment.

Plaintiffs also ask the court to consider two newspaper articles in support of their opposition to the motions to dismiss. See Pl. Mot. Prelim. Inj., Exs. 9,10, ECF Nos. 2-5, 2-6. The articles discuss the taking of private property in the Borough of Centralia and defendant Blaschak's acquisition of the same. Id. While courts have taken judicial notice of newspaper articles or certain facts contained within them, there is no reason to do so here. That these articles were, in fact, published is not at all relevant to these motions, and the statements contained in the articles themselves are hardly without dispute. See Selkridge v. United of Omaha Life Insurance Co., 360 F.3d 155, 162, n. 5 (3rd Cir. 2004) (court may take judicial notice of an article's existence without accepting the truth of the statements contained therein); Montgomery County v. Microvote Corp., 320 F.3d 440, 444, n. 2 (3rd Cir. 2003) (reports made by the press are frequently disputed).

Exhibit 27 appears to be a map of Conyngham Township, Columbia County with

handwritten indications of where certain properties are located.  See Pl. Mot. Prelim. Inj., Ex. 27, ECF No. 2-8.  As with the letters from counsel discussed above, such documents are not within the proper scope of judicial notice; there is no indication that these maps are public documents, nor do the handwritten notes on them constitute generally known facts that are capable of ready determination.  See Fed. R. Evid. 201(b).  Accordingly, the court will not take judicial notice of these documents.

Plaintiffs also include documents from state agencies reporting on "borehole monitoring" and including characteristics of the mine fire which has given rise to this litigation.  See Pl. Mot. Prelim. Inj., Exs. 27 part 2, 28, ECF No. 2-8.  These exhibits, like the maps and letters discussed above, also fail to meet the requirements of Fed. R. Evid. 201(b) for reasons identical to those discussed above.

Finally, plaintiffs include two exhibits which appear to be selected, non-consecutive pages from deeds of trust recorded in Columbia County.[4]  It is not entirely clear what is intended by the inclusion of these documents, let alone whether they might be authentic.  As such, they are entirely outside the scope of Fed. R. Evid. 201(b) and are not entitled to judicial notice.

In their opposition to the motions to dismiss, plaintiffs offer their intent to submit affidavits and other statements supporting their claims.  See e.g., Pl. Opp'n Mot. Dismss, ECF Nos. 83-86 ("Plaintiff intends to submit an affidavit of Tom Hynoski that it was only him that found out on or about June 1, 2009, . . . . plaintiffs . . . . now submit that it was less than two years before the filing of this suit that they learned of it . . . . plaintiffs submit that none of their

---

[4]Exhibit 3 appears to be a compilation of four of nine, non-consecutive pages from a deed of trust recorded on February 5, 2010.  Exhibit 4 is likewise composed of seven of twelve, non-consecutive pages from an April 27, 2009 recorded deed of trust.  See Pl. Mot. Prelim. Inj., Ex. 4, ECF No. 2-2.

claims specifically accrued until at least December 31, 2009 . . . . " ). The court will not consider any of these statements or allow such supporting material to be submitted in connection with the resolution of these motions. As discussed above, a motion to dismiss considers only materials attached to or relied upon by the complaint, or matters that the court may take judicial notice of pursuant to Fed. R. Evid. 201(b). See infra, pp. 5-6. This does *not* include bare assertions of fact contained in the motion itself or the promise of forthcoming exhibits – which exhibits may or may not be the proper subject of judicial notice.

C.     STATUTE OF LIMITATIONS

Common to three of defendants' motions to dismiss is the argument that plaintiffs' claims are time-barred by the two-year statute of limitations applicable to a § 1983 cause of action. See Defs.['] Mot. Dismiss, ECF Nos. 56, 57, 58. Plaintiffs respond first, that the statute of limitations has not run on account of the ongoing violations and injuries; and secondly, that as to plaintiff Koschoff, whose declaration of taking was not filed until July, 2010, this argument is inapplicable. Here, the court addresses whether the claims of six (6) plaintiffs, all of whom had declarations of taking filed with respect to their property in 1993, are time-barred from asserting their § 1983 claims.

Section 1983 of the Civil Rights Act is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989); Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979). Accordingly, the statute of limitations for § 1983 actions is drawn from the general or residual statue of limitations for personal injury actions in the state where the case is brought. Owens v. Okure, 488 U.S. 235, 249-50 (1989). Here, Pennsylvania's two-year statute of limitations for personal injury actions

governs.  42 Pa. C.S.A. § 5524; <u>Sameric Corp. of Del., Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3rd Cir. 1998).

The accrual period for statute of limitations purposes begins when the plaintiffs know, or have reason to know, of the injury that constitutes the basis of the action.  <u>Sameric</u>, 142 F.3d at 599.  The "discovery rule," recognized by Pennsylvania law, tolls the statute of limitations period when a plaintiff is unable, "despite the exercise of due diligence," to know of the injury or its cause.  <u>Mest v. Cabot Corp.</u>, 449 F.3d 502, 510 (3rd Cir. 2006) (citing <u>Pocono Int'l Raceway, Inc. v. Pocono Produce, Inc.</u>, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983)).  The tolling continues until "the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct."  <u>Mest</u>, 449 F.3d at 510 (citing <u>Debiec v. Cabot Corp.</u>, 352 F.3d 117, 129 (3rd Cir. 2003)).  Plaintiffs here claim that all of their claims are tolled under the discovery rule and by virtue of the "continuing violations" perpetuated by defendants.  <u>See</u> Am. Compl. p. 3, ECF No. 54.

The declarations of taking with respect to all of plaintiffs' properties (except one) were filed in 1993.  Am. Compl. ¶ 41, ECF No. 54.[5]  The condemnation proceedings concluded in April 1996, when plaintiffs' petition for certiorari to the United States Supreme Court was denied.  <u>Noble v. Columbia Cnty. Redev. Auth.</u>, 517 U.S. 1119 (1996).  Nonetheless, plaintiffs contend that these dates have no bearing on the running of the statute because, while the takings may have been valid at the time they were filed, the "true purposes" of the condemnations were fraudulently concealed.  <u>See</u> Pl. Opp'n Mot. Dismiss, ECF Nos. 83-86.  Nevertheless, plaintiffs need to allege when they became aware of the fraudulent nature of the taking for purposes of a

_____

[5]A notice of taking was not filed against plaintiff John Koschoff's property until July, 2010.  Def. Mot. Dismiss, Ex. A, ECF No. 70-1.

due process claim under § 1983. Nothing in the complaint shows when the accrual of plaintiffs' substantive due process claims would have occurred. The bald assertion, in opposition to the motions to dismiss, that "plaintiffs submit that none of their claims specifically accrued until at least December 31, 2009 . . . . " is insufficient to escape dismissal on a Fed. R. Civ. P. 12(b)(6) motion. Pl. Opp'n Mot. Dismiss, ECF Nos. 83-86.

Plaintiffs further argue that there are "continuing violations issues" that apply to all of their claims. This argument is similarly unavailing. The continuing violations doctrine is an "equitable exception to the timely filing requirement" of conduct that is "more than the occurrence of isolated or sporadic acts." West v. Philadelphia Elec. Co., 45 F.3d 744, 754, 755 (3rd Cir. 1995); Mandel v. M & Q Packaging Corp., 706 F.3d 157, 166-67 (3rd Cir 2013) (persistent, ongoing pattern of discriminatory acts constitutes 'ongoing violation' in hostile work environment claim). In reigning-in the potentially far-reaching effects of this doctrine, the Supreme Court distinguished between discrete acts, which are individually actionable, and those that – while not individually actionable – may be aggregated to give rise to a cause of action. See National Railroad Passenger Corp. V. Morgan, 536 U.S. 101(2002). The continuing violations doctrine applies to only the latter types of acts – such as those forming the basis of a hostile work environment claim under Title VII – for the simple reason that no cause of action accrues until such acts, in the aggregate, give rise to an actionable claim. See O'Connor v. City of Newark, 440 F.3d 125, 128-129 (3rd Cir. 2006) (Morgan principles apply equally to § 1983 claims).

With these principles in mind, it is clear that plaintiffs' claims are not susceptible to a continuing violations theory. The Netchel settlement is the last occurrence forming the basis for plaintiffs' equal protection claim. See Am. Compl. ¶¶ 46-58, ECF No. 54. Specifically, the

14

claim is based on the CCRA's alleged settlement and withdrawal of the declaration of taking with respect to the Netchel property, but none of plaintiffs' property. The agreement with the Netchels was reached in November 2006, accruing plaintiffs' claim for an equal protection violation at that time.

Similarly, a First Amendment retaliation claim would have accrued after any individual act which was intended to punish the person exercising their First Amendment rights. See O'Connor, 440 F.3d at 127; Karchnak v. Swatara Township, 540 F.Supp.2d 540, 547 (M.D. Pa. 2008) (Rambo, J.) The most generous reading of the amended complaint contemplates a claim that plaintiffs were not granted the same property interest as that of the Netchels on account of some protected First Amendment activities in which they participated. See Am. Compl. ¶¶ 46-57, 77, ECF No. 54. Again, however, this claim accrued when the settlement – which did not include any of plaintiffs' property – was reached with the Netchels; a decision made by the CCRA that plaintiffs allege was made in retaliation.

Plaintiffs' substantive due process claim can only be plausibly read to arise from the discreet event of plaintiffs' property being condemned and taken by the CCRA.[6] This claim became actionable once plaintiffs were on notice of the declarations of taking filed against their property in 1993. At the very latest, the action might have accrued once the state court proceedings were completed and final – in 1995. Either way, it cannot be maintained that any substantive due process violations continued past the date when the properties were taken by the authorities. Consequently, neither the discovery rule nor the doctrine of continuing violations

_____

[6]Although the amended complaint is devoid of specific factual allegations supporting a substantive due process claim, the court presumes that the reference to "fraudulent taking" of plaintiffs' property through improper means is intended to state a claim for a substantive due process violation.

excuses plaintiffs' delay in bringing their claims outside the statute of limitations period. Therefore, only plaintiff Koschoff's claims will go forward.

The court now turns to the extent to which any of the defendants can be subject to liability under § 1983, given their respective statuses as either private parties or as state actors.

## D. DEFENDANTS' LIABILITY TO KOSCHOFF

The defendants named in this action include four private parties and four public entities. Only persons acting under the color of state law, however, can be held liable for constitutional violations under § 1983. See 42 U.S.C. § 1983. This does not include states (see Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997)), their agencies (see Howlett v. Rose, 496 U.S. 356, 365 (1990)), or purely private parties (see Lugar v. Edmondson Oil Co., 457 U.S. 922, 930 (1982).

### 1. Commonwealth Defendants

The amended complaint names the Pennsylvania Department of Community and Economic Development ("DCED"), Alan Walker and Steven Fishman as the "Commonwealth defendants."

Plaintiffs acknowledge that DCED is an agency of the Commonwealth of Pennsylvania (also known as a "state agency"), of which Alan Walker and Steven Fishman are employees. Specifically, Walker is the Secretary of the DCED and is sued in his official capacity for purposes of plaintiffs' request for injunctive relief. See Am Compl. ¶ 13, ECF No. 54. Fishman is named in his individual capacity as a "spokesman and counsel for, and on behalf of . . . . DCED." Id.

16

a.    *DCED*

It is well-settled that states do not constitute 'persons' to which liability can attach, for purposes of § 1983.  See Arizonans for Official English, 520 U.S. at 69; Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).  This is equally true of governmental agencies which are arms of the state – i.e., state agencies.  See e.g., Howlett, 496 U.S. at 365.  Plaintiffs admit that defendant DCED is a "Commonwealth of Pennsylvania agency" which was empowered to proceed with the voluntary relocation program, and subsequent eminent domain proceedings, against the residents affected by the underground mine fire in the Borough of Centralia.  Am. Compl. ¶¶ 13, 33, ECF No. 54.  Such factual allegations bring DCED squarely within the definition of a state agency contemplated by the courts and immune from suit under § 1983.  Accordingly, this defendant will be dismissed from this action and no further claims will proceed against it.

b.    *Walker*

The immunity granted to state agencies also extends to state *officials* who are sued in their official capacity for damages.  See Arizonans for Official English, 520 U.S. at 69, n. 27.  State officials sued in their official capacity for *injunctive relief*, however, may be liable under § 1983.  See Will, 491 U.S. at 71, n. 10.  Here, plaintiffs have carefully plead that defendant Walker is being named in his official capacity for purposes of plaintiffs' request for *injunctive relief*, and not damages.  See Am. Compl. ¶ 13, ECF No. 54.  Although the Commonwealth defendants dismiss the significance of this distinction, it is a significant one which allows plaintiffs' claims against defendant Walker to proceed.  In particular, defendant Walker may be sued in his official capacity for purposes of the injunctive relief to which plaintiffs claim they are

entitled.

c. *Fishman*

Although a claim against defendant Fishman in his individual capacity is not barred by the immunity principles discussed above, plaintiffs must plead factual allegations sufficient to demonstrate that the official-defendant personally caused the alleged constitutional injury. See Graham, 473 U.S. at 166. Plaintiffs have entirely failed to make such a showing here. The amended complaint is void of factual allegations pointing to any behavior on the part of defendant Fishman. Indeed, his name appears only in the paragraph of the amended complaint introducing the parties. See Am. Compl. ¶ 13, ECF No. 54. Although the court does not require "detailed factual allegations" of Fishman's behavior, mere labels and conclusions will not do. See Twombly, 550 U.S. at 555. Here, plaintiff alleges simply that Fishman has "unlawfully acted as the spokesman and counsel for, and on behalf of" DCED. Am. Compl. ¶ 13, ECF No. 54. This bare assertion is insufficient to state a cognizable claim against defendant Fishman under § 1983. Accordingly, this defendant will be dismissed from this action.

2. RJG and Blaschak Defendants

Plaintiff names four private parties in this suit – the law firm of Rosenn Jenkins and Greenwald, LLP, individual attorneys John T. Zelinka and Gary Taroli from that firm, and Blaschak Coal Corporation. Despite their status as private parties, plaintiffs claim these defendants are subject to § 1983 liability by virtue of their association and conspiracy with state actors.

In order to come within the purview of § 1983 liability, plaintiff must show that these defendants acted under color of state law by pointing to some action, undertaken by them, that is

18

"fairly attributable" to the state.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 930, 937

(1982); Angelico v. Lehigh Valley Hosp., Inc., 184 F.3d 268, 277 (3rd Cir. 1999).  To do so,

plaintiffs must show (1) that the defendants' acts were "the exercise of some right or privilege

created by the State or by a rule of conduct imposed by the state or by a person for whom the

State is responsible" and (2) that the defendants may fairly be said to be state actors.  Id.

a.   *RJG and Attorneys Zelinka and Taroli*

Attorneys performing their traditional functions will not be considered state actors solely

on the basis of their position as officers of the court.  Angelico, 184 F.3d at 277; and see Poke

County v. Dodson, 454 U.S. 312, 318 (1981).  Thus, private attorneys cannot be held liable under

§ 1983 for unilateral actions which they took on behalf of their clients as their private attorneys.

Drum v. Nasuti, 648 F.Supp. 888, 897 (E.D. Pa. 1986).  Rather, to satisfy the "color of state law"

element, plaintiff must allege that defendants were not merely performing lawyers' traditional

functions, but were attempting to exercise some sort of official authority over them.  Repoli v.

Cuoco, 316 Fed.Appx. 188, 190 (3rd Cir. 2009) (unpublished opinion); and see Dodson, 454 U.S.

at 325.

Here, plaintiff charges that RJG and attorneys Zelinka and Taroli coordinated and

asserted certain actions and interests of their clients, which plaintiff believes to be unlawful, and

which resulted in the deprivation of plaintiff's federally guaranteed rights.  See Am. Compl. ¶¶

11-12, ECF No. 54.  The actions described – asserting the rights and interests of one's clients –

fall entirely within the realm of traditional lawyering.  The fact that plaintiff was harmed as a

result of defendants' actions is a function of the adversarial system of law, and does not work to

impute liability on these attorneys.  Moreover, there are no allegations suggesting that defendants

exercised any official authority over their clients. Consequently, these defendants will be dismissed from this action.

b. *Blaschak Corp. and Conspiracy*

Plaintiff also attempts to bring these private parties – including defendant Blaschak – within the purview of a § 1983 claim by alleging a conspiratorial relationship between these parties and state actor, the CCRA. A private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts "under color of state law" for purposes of § 1983. See Dennis v. Sparks, 449 U.S. 24, 27-28 (1980); Abbott v. Latshaw, 164 F.3d 141, 147 (3rd Cir. 1998). Although the precise contours of such a conspiracy have not been clearly delineated, the amended complaint does not appear to properly allege a conspiracy between Blaschak, RJG and CCRA sufficient to cloak the private defendants with the "color of state law." See Angelico, 184 F.3d at 278. Here, plaintiffs unhesitatingly assert that "during the course of the efforts to extinguish the fires . . . . a plan was hatched . . . . to use the fire as a pretext to justify the removal of all the residents of the Borough . . . . " See Am. Compl. ¶ 45, ECF No. 54. Plaintiff further alleges that "this conspiracy also involved a number of local and state public officials, and other private persons, all of whose identities are not yet known, but will be developed through discovery." Id. Such allegations hardly demonstrate the type of joint action or understanding required to support a conspiracy claim. See Kost, 1 F.3d at 185 (conspiracy claim requires a showing that defendants somehow reached an understanding with at least one of the state defendants to deny plaintiffs their civil rights); Abbott, 164 F.3d at 148 (alleging that defendant acted "at the instance and request of" the state and depicting joint action between the two parties which resulted in the deprivation of plaintiff's rights was sufficient to

satisfy the standards of notice pleading and bring defendant's acts within the ambit of state action); Leshko v. Servis, 423 F.3d 337, 342 (3rd Cir. 2005) (citing Rendell-Baker, 457 U.S. 830, 840-41 (1982) (state-hired private contractors are not automatically state actors under § 1983, even if the state is their only patron). Plaintiff's claims are nothing more than conclusory allegations, unsupported by fact and which the court need not accept at true. See Twombly, 550 U.S. at 555.

Accordingly, the court does not find that any of the private defendants are state actors for purposes of this § 1983 action. These defendants will therefore be dismissed from this suit.

        3.     CCRA

In the amended complaint plaintiff points out that the CCRA is a "municipal creature" that acted on behalf of the Commonwealth of Pennsylvania to relocate residents of the Borough of Centralia away from the area affected by the mine fires. Am. Compl. pp. 15, 19, ECF No. 54. The CCRA does not dispute that it is a state actor for purposes of § 1983 liability, and does not claim that it is immune from suit as do the other defendants. Accordingly, plaintiff Koschoff's claims may proceed against the CCRA as a state actor which may be liable under § 1983.

Having decided that only defendants Walker and the CCRA may be liable under § 1983, the court turns to whether the claims against them survive Walker and the CCRA's motions to dismiss which raise the following pertinent arguments: first, that all claims are bared by the doctrines of res judicata, collateral estoppel and Rooker-Feldman; and second, that plaintiff fails to state a claim upon which relief can be granted under any of the causes of action raised in the amended complaint.

E.     CLAIM AND ISSUE PRECLUSION

The CCRA first argues that all of plaintiff's claims are barred by <u>res judicata</u> and/or collateral estoppel.  (<u>See</u> Doc. No. 65, p.19).   Specifically, defendant claims that the Pennsylvania state court eminent domain proceedings bar this court from examining the constitutional issues now raised by plaintiffs.  The court need not delve deeply into the doctrines of either res judicata or collateral estoppel because neither doctrine is implicated by the federal claims before this court.  Only the claims of plaintiff Koschoff remain to be considered on the merits, and it is undisputed that he was in no way involved in the condemnation proceedings that were conducted in the state court action.  The parties agree that the declaration of taking was not filed against Koschoff until July 1, 2010 – a full fifteen years after the conclusion of the other plaintiffs' condemnation proceedings.

Both claim and issue preclusion require that the parties in a prior and latter suit be identical or in privity to each other.  <u>See</u> <u>Chada v. Chada</u>, 756 A.2d 39, 42-43 (Pa. Super 2000) (<u>res judicata</u> requires identity of persons and parties to both actions; an issue may be precluded if the party against whom it was asserted was a party or in privity with a party in the prior case).  Koschoff was clearly not a party to these state court eminent domain proceedings, and there is also no indication that he was in privity with any of the property owners involved in those proceedings.  Without such a relationship, neither claim nor issue preclusion applies to plaintiff's claims before this court.

F.     ROOKER-FELDMAN

Defendant CCRA also argues that all of plaintiff's claims are barred by the <u>Rooker-Feldman</u> doctrine.  In certain circumstances, where a federal suit follows a state suit, the <u>Rooker-</u>

Feldman doctrine prohibits a federal district court from exercising jurisdiction over the later-filed federal action. See Great Western Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 163-64 (3rd Cir. 2010); Rooker v. Fidelity Trust, Co., 263 U.S. 413, 416 (1923) (holding that no federal court, other than the Supreme Court, may entertain a proceeding to reverse or modify a judgment of a state court); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983) (holding that federal district court lacked subject-matter jurisdiction to review the decision of a District of Columbia high court determining application of a local rule to the case before it).

Specifically, the doctrine prevents "cases brought by state-court losers challenging state-court judgments rendered before the district court proceedings commenced" and inviting review and rejection of those judgments. Lance v. Dennis, 546 U.S. 456, 460 (2006); and see Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). The doctrine had been expanded by the lower federal courts to preclude any federal claim that was "inextricably intertwined with an issue adjudicated by a state court." See e.g., Walker v. Horn, 385 F.3d 321, 329, 332 (3rd Cir. 2004) (federal claim was barred because granting the relief requested would require the district court to conclude that the state court made an incorrect factual or legal determination); In re Knapper, 407 F.3d 573, 580 (3rd Cir. 2005) (if federal relief can only be predicated upon a conviction that the state court was wrong, federal claim is barred).

The Supreme Court suppressed this expansive application in Exxon Mobil by reiterating the "limited circumstances" in which the doctrine acts to bar a federal district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate. See Exxon Mobil Corp., 544 U.S. at 291. The Supreme Court explained that

Rooker-Feldman is not implicated simply because a party attempts to litigate in federal court a matter previously litigated in state court so long as the federal plaintiff presents some independent claim; albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party. See Id. at 293; Fox Rothschild LLP, 615 F.3d at 166.

Breaking down the holding of Exxon Mobil, the Third Circuit in Fox Rothschild LLP, enumerated four requirements that must be met for the Rooker-Feldman doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. See Id. at 166. In the instant matter, plaintiff does not proceed past the first requirement of applying the Rooker-Feldman doctrine: he did not lose in state court. On this record, there is no indication that the declaration of taking filed against Koschoff in July 2010 ever proceeded through a formal and final state court judgment. Thus, the first and third requirements of applying the Rooker-Feldman doctrine are not met and Koschoff's claims against defendants Walker and the CCRA are not barred.

G.      FAILURE TO STATE A CLAIM

Turning to the merits of plaintiff's claims, the court now addresses whether plaintiff states a claim upon which relief can be granted based on any of its legal theories – that is, First Amendment, due process, equal protection, civil conspiracy, and the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"). The court addresses each of these theories in turn.

1.      First Amendment Claim

A § 1983 claim predicated on a First Amendment retaliation theory requires plaintiff to show that (1) he engaged in protected activity, (2) defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his rights; and (3) there was a causal connection between the protected activity and the retaliatory action.  See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3rd Cir. 2007); Thomas v. Independence Twp., 463 F.3d 285, 296 (3rd Cir. 2006).

The requisite causal connection is established when plaintiff shows either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. See DeFlaminis, 480 F.3d at 267; Krouse v. American Sterilizer Co., 126 F.3d 494, 503-04 (3rd Cir. 1997).

Here, the amended complaint is devoid of any factual allegations forming the basis of a First Amendment claim, let alone demonstrating the requisite elements identified above. Although plaintiff makes a passing reference to a violation of his First Amendment rights, such a bald assertion does not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  See Twombly, 550 U.S. at 555.  Plaintiff identifies no protected activity in which he engaged *prior to* any retaliatory action being taken. In the absence of such allegation, the court will not surmise the basis for a properly plead claim.  Accordingly, plaintiff's First Amendment violation claim will be dismissed.

2.      Due Process Claim

In assessing a substantive due process claim that challenges the taking of property by state

officials, the court applies a "shocks the conscience" standard.  See United Artists Theatre

Circuit, Inc. v. Township of Warrington, PA, 316 F.3d 392, 399-401 (3rd Cir. 2003); Whittaker v.

County of Lawrence, 437 Fed.Appx. 105, 109 (3rd Cir. 2011) (unpublished opinion).  In other

words, violation of plaintiff's substantive due process rights turns on whether the conduct of

defendant CCRA amounts to an abuse of official power that "shocks the conscience."  Id.; see

County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) ("the substantive component of the

Due Process Clause is violated by executive action only when it 'can properly be characterized as

arbitrary, or conscience shocking, in a constitutional sense.' ")  As the Third Circuit has made

clear, in cases (such as the instant matter) arising from land-use decisions, this standard requires

more than bad faith or improper motive, and precludes a district court from acting as a zoning

board of appeals.  See United Artists Theatre Circuit, Inc., 316 F.3d at 399, 402 (recalling that

the core concept of due process is protection against arbitrary action and only the most egregious

official conduct); and see Whittaker, 437 Fed.Appx. at 109 (allegation that officials did not

follow state law in taking plaintiff's property, without more, does not rise to the level of a federal

constitution substantive due process violation).

        The court presumes that plaintiff's allegation that their real property was taken from them

by fraudulent and improper means forms the basis of their due process claim.  Plaintiff also

alleges that defendants used contrived evidence to effectuate the relocations and the basis for the

takings have never been addressed in a proceeding of any sort.  See Am. Compl. ¶ 1, ECF No.

54.  Presumably, such behavior would violate Pennsylvania's law regarding eminent domain

proceedings. While some violations of state law may shock the conscience, not every such

violation is "constitutionalized" by applying the substantive due process clause.  See  Whittaker

437 Fed. Appx. at 109.  This case appears to fall squarely within the latter category.  As the courts have explained, the due process clause is not meant to authorize review of state actors' compliance with state law.  See Id.  Certainly the courts of Pennsylvania are bound by their own law on how eminent domain proceedings may be conducted.  But it is not within the province of the federal courts to review such compliance.  Id. Violations of state law might constitute conscience-shocking behavior when it also involves corruption, self-dealing, bias against an ethnic group, or other additional facts.  Id.  But no such conduct is alleged here, nor can any be inferred on this record.  Accordingly, plaintiff does not state a claim for violation of his substantive due process rights under the United States Constitution.

3.　　Equal Protection Claim

A traditional Fourteenth Amendment equal protection claim requires plaintiffs to plead, among other things, that they are members of a protected class or group.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Because, however, plaintiff does not allege that he is a member of a protected group or class of citizens, the court considers his equal protection claim under the "class of one" theory.  See Olech, 528 U.S. at 564 (allowing equal protection claims to go forward where plaintiffs did not allege membership in a class or group).  To state a claim under such a legal theory requires a plaintiff to show that: (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally; and (3) there was no rational basis for the difference in treatment.  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3rd Cir. 2006); see Olech, 528 U.S. at 564.

Allegations of irrational and wholly arbitrary treatment, even without allegations of improper motive, are sufficient to state an equal protection claim for relief.  Olech, 528 U.S at

565; Phillips v. County of Allegheny, 515 F.3d 224, 243 (3rd Cir. 2008). A claim also need not specifically name similarly situated individuals or identify differently-handled situations. See Olech, 528 U.S. at 565 (general allegation that similarly situated property owners had been asked for a different easement could be fairly construed to state an equal protection claim).

CCRA argues that plaintiff fails to state a claim under the "class of one" theory because the amended complaint lacks sufficient allegations concerning whether the Netchels were similarly situated to plaintiffs. See Def. Mot. Dismiss pp. 31-32, ECF No. 65. Defendant maintains that plaintiff must plead specific facts showing that the Netchels are *identically situated* to plaintiff. But defendant's argument ignores the holding of Olech which relaxes the "class of one" pleading requirements by negating the need for specificity. See Phillips, 515 F.3d at 244. The amended complaint alleges that the Netchel property was located within a mile of plaintiff's property, in the heart of the fire impact area, and was subject to the exact same declaration of taking as the plaintiff. See Am. Compl. ¶¶ 46, 56, ECF No. 54. It is further alleged that, at some point, the Netchels initiated litigation against the authorities who were carrying out the condemnation proceedings and subsequently entered into a settlement agreement with them. Id. at ¶¶ 48, 56. As a result of the agreement, the CCRA returned to the Netchels their fee simple interest in their property and the declaration of taking was withdrawn. Id. Finally, plaintiff allegedly did not receive the same "arrangement" as the Netchels and, thus, was denied the equal protection of the law. These allegations, for purposes of a motion to dismiss, sufficiently state that the Netchels were similarly situated to plaintiff.

Defendant additionally argues that the allegations show only that defendants believed there was an advantage to settling the Netchel litigation – which is not an equal protection

violation.  See Def. Mot. Dismiss p. 32, ECF No. 65.  This argument essentially claims that plaintiffs were not *in fact* similarly situated to the Netchels, and that there *did* exist a rational basis for the treatment they received as opposed to what plaintiffs received.  Defendant's argument may, ultimately, prove successful.  But it is not one the court may decide on the pleadings.

Defendant's reliance on Holt Cargo Systems, Inc. v. Delaware River Port Authority, 20 F. Supp. 2d 803 (E.D. Pa. 1998) (Shapiro, J.), therefore, is misplaced.  It is true that the court in Holt deemed plaintiff to be not similarly situated to its competitors who received more favorable contract terms than plaintiff.  Id.  But this determination was made on a motion for summary judgment which considered all the evidence of record and  relied on deposition testimony in reaching that conclusion.  A motion to dismiss considers only the pleadings and does not look to the type of extrinsic evidence that the court in Holt relied on.

Having sufficiently plead allegations that state an equal protection claim,  plaintiffs may proceed with this claim against defendants Walker and the CCRA under a "class of one" theory.

4.    Other Claims

The amended complaint contains passing reference to RICO and plaintiff's rights under the Constitution and laws of Pennsylvania to be free from political oppression, fraud and of arbitrary and capricious government action devoid of proper purposes.  See Am. Compl. ¶¶ 1,9, ECF No. 54.  The remainder of the amended complaint contains no more specific factual or legal allegations with respect to RICO or any state law cause of action.  Therefore, because the court cannot discern any further cognizable claims, all other claims will be dismissed.

### III. CONCLUSION

For the reasons stated above, the court will grant in part and deny in part defendants' motions to dismiss the amended complaint. The court will dismiss with prejudice all of the claims brought by the Hynoski and Mervine plaintiffs. The court will also dismiss from this action defendants RJG, Trapoli, Zelinka, Blaschak, Fishman and DCED along with plaintiff's First Amendment, Due Process, RICO and state law claims. No further opportunity to amend the complaint will be granted as plaintiffs have already been given sufficient opportunity to cure these pleading deficiencies. Remaining in this action is plaintiff Koschoff's equal protection claim against defendants Walker and CCRA. An appropriate order is attached.


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BONNIE HYNOSKI, | : | |
| STEPHEN HYNOSKI, | : | |
| CHRISTINE HYNOSKI, TOM HYNOSKI, | : | |
| THE BOROUGH OF CENTRALIA, | : | |
| HAROLD MERVINE, JOHN KOSCHOFF, | : | |
| HELEN HYNOSKI AND | : | |
| WALTER HYNOSKI, | : | |
| | : | Case No. 4:10-CV-2222 |
| Plaintiffs | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| | : | |
| COLUMBIA COUNTY | : | |
| REDEVELOPMENT AUTHORITY, | : | |
| ROSENN JENKINS AND GREENWALD, | : | |
| LLP, JOHN T ZELINKA, GARY TAROLI, | : | |
| BLASCHAK COAL CORP., STEVEN | : | |
| FISHMAN, COMMONWEALTH OF | : | |
| PENNSYLVANIA, DEPT. OF | : | |
| COMMUNITY AND | : | |
| ECONOMIC DEVELOPMENT AND | : | |
| C. ALAN WALKER, | : | |
| | : | |
| Defendants. | : | |

**ORDER**

   **AND NOW,** this 19th day of April, 2013, the defendants' motions to dismiss (ECF Nos.

56, 57, 58, 59) the amended complaint (ECF No.54) are hereby **GRANTED IN PART** and

**DENIED IN PART,** as follows:

   1.   Defendants Rosenn Jenkins and Greenwald LLP, Gary Taroli and John T.

        Zelinka's  motion to dismiss (ECF No. 56) is **GRANTED** with respect to

31

plaintiffs' claims brought under 42 U.S.C. § 1983 against these defendants;

2.    Defendant Blaschak Coal Corp.'s motion to dismiss (ECF No. 59) is **GRANTED** with respect to plaintiffs' claims brought under 42 U.S.C. § 1983 against this defendant;

3.    The Commonwealth defendants and the Columbia County Redevelopment Authority's motions to dismiss (ECF Nos. 57, 58) are **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.    The motions are **GRANTED** with respect to the statute of limitations having run against plaintiffs Bonnie, Stephen, Walter and Christine Hynoski; and Lamar and Lana Mervine;

    b.    The statute of limitations has not run against plaintiff John Koschoff. However, the motions are **GRANTED** with respect to plaintiff Koschoff's First Amendment, Due Process, RICO and state law claims;

    c.    The motions are **DENIED** with respect plaintiff Koschoff's Equal Protection claim;

    d.    The motions are **DENIED** with respect to plaintiff Koschoff's claims brought under 42 U.S.C. § 1983 against defendant Walker; and

4.    Defendants' joint motion to stay discovery (ECF No. 108) is denied as moot. Plaintiff Koschoff shall continue discovery with respect to his Equal Protection claim against defendants Walker and CCRA.

5.    The Clerk of Court is directed to amend docket entry 54 consistent with the court's August 11, 2011 order (ECF No. 103).

Matthew W. Brann
United States District Judge